Good morning. If it pleases the Court, I'm Jason Bach on behalf of the Plaintiff Appellant Nipleth Borovac. I would like to reserve five minutes for a rebuttal, if I may. Sure. Could you put the mic a little closer? Thanks. Sure. As awful as the facts are of this hazing incident, they do not excuse the fact that defendants failed to provide any notice of a hearing concerning additional penalties or punishment or discipline after December 8th of 2010. Counsel, could you do me a favor? We have a number of visitors, students visiting today. Could you just very briefly describe the hazing incident or why we're here so they can follow? Sure. The plaintiff and other students on the wrestling team were on their first away trip to Southern Nevada in 2010, on December 3rd of 2010. And apparently there was a long-running tradition amongst the wrestling team members that the freshman teammates would be hazed during the first away trip of the year. And in fact, that is what took place in this particular situation. Thank you. The hazing involved physical abuse? It involved being duct-taped to a coffee table. It involved being urinated on. It involved being thrown shampoo on him. Yes, it did involve physical abuse. And just to put the case in perspective, the kid who did this to the other kid is the one who was suing? Yes. Okay. Right. Because as horrible as those facts are, just like a criminal who is convicted without due process, we have a situation here where we have a student who was, these issues were self-reported by the student. On December 4th, the day after this incident, this student, my client, along with the other students, went to the head coach and said, hey, look, you know, here's what happened last night. You know, things got a little bit out of hand. And the head coach stopped them and said, quote, I don't want to hear about it. As rumors started circulating around the school on December 6th, my client again went to the head coach along with the other students. And then the head coach allowed them to say exactly what happened. They didn't leave any details out. And on December 7th, the head coach went to the athletic director, made a full report to him. On December 8th, the athletic director goes to the principal, consults with his vice principals, reviews the student handbook, and determines that the punishment is kicked off the wrestling team for two weeks, two Saturday detentions, and barred from overnight wrestling trips. So your time is ticking. So thank you for indulging me with that background. My understanding is your client, as Judge Silverman said, is the one who was accused of this hazing, found to have, in fact, I think self-confessed, essentially, and was given a punishment and, I'll say, served his time. He couldn't go on a couple of away trips and he served his detentions. And then when this became known to the broader public, there was a more serious punishment imposed. And that's what he's suing, right? He was suspended for a semester but allowed to graduate on time. Is that fair? He was. However, that suspension is reflected in his testimony. He's from a small town in Nevada, from a military family, and his father just retired after 25 years as a military officer in the Navy. You know, his dreams of following in his footsteps are... Is that right? He can't get into the military now? I know that representation is... Is that his problem? That's his testimony and that's his father's testimony. It's one of the questions I had. Was there any testimony earlier in this case from anyone other than the plaintiff that he wouldn't be allowed to go into the military because he was suspended from high school for one term? Okay. One of the complaints that he makes, or arguments that he makes, that he's upset with the school district, one board member in particular, for making a statement to the effect, and I'm paraphrasing, so something about, you know, what will I say to the people who vote for me if I don't take action here? And your client views that as a public official bowing to public pressure, or perhaps putting his own interests in being re-elected above... At the expense of your client, putting those first. But it seems to me... I found that a very curious argument because I don't know why I wouldn't look at that and think that what he's essentially saying is, I need to be accountable. And this is a pretty serious hazing incident, and so we need to take action. Why should I look at it in the light that you're suggesting? Because this is a student disciplinary matter that is protected under FERPA, federal law, that prohibits school officials from discussing any type of student disciplinary issues. And what this official is saying is that he intends to go out as part of his re-election campaign and talk about this private confidential information. Well, did he say that? I thought the problem... I took the statement to mean that he was saying the public is going to be upset if this student is merely slapped on the wrist and told that he has to serve a couple of Saturday suspensions. The public has no right to know what happens to that student under federal law. Well, okay, at the time the statement was made, hadn't this already become public? I thought there was a newspaper article. Actually, the media had reported this, right? Most of the media attention was a television station in Reno. Okay, so what does the board member do about that? The public knows about this, takes high school hazing very seriously. Some students have been hurt in this country, some students have been killed because of hazing incidents. What's the school board member to do about that? He's not supposed to say anything about this, same as a doctor under HIPAA. If there's someone, a public figure that has a health condition that is reported in the media, that doesn't give the doctor the approval to violate confidentiality and share that information with the public. Okay, but your client's claim is intentional infliction of emotional distress. That is one of the claims, yes. Okay, so in order to rule for your client, we would have to find that the trial court, who dismissed this claim, did so erroneously. We'd have to find that this discipline that he received is outside all possible bounds of decency and utterly intolerable in a civilized community, right? That is correct. Okay, so why would I agree with you about that? Well, and also one of the other standards that we cited, too, was a substantial departure from academic norms. Disciplining a student, having him serve his discipline, and then when there is media scrutiny, going back and applying more discipline when... He got a hearing for that, didn't he? The first time? Yeah, no, when they increased. Didn't he get a hearing? No, he didn't even know why he was there. When did he get a hearing? The first time, on December 8th, he was brought into the principal's office and said, here's what you're accused of doing. Do you agree that you did this? I had understood that at some point, he had an actual hearing in front of school officials or school board officials? Yes, that was after the 10-day suspension. Okay. But yeah, he did have, but that was leading up to the actual recommendation for expulsion, which ultimately turned into a one-semester suspension. But what's wrong with that, counsel? There's sort of a flavor of double jeopardy or something in your brief. And of course, that's — you're not really making a double jeopardy argument. It doesn't apply, but it applies more in the sense of a procedural due process issue. Okay, so the school board knew that he had to have this 10-day suspension, as Judge Hawkins was indicating. Then there was a hearing, and he was allowed to be heard. So since — there's no indication they didn't take the first 10-day suspension into account, is there? I'm sorry? There's no indication, I don't think, that they didn't take the first 10-day suspension into account when they decided to impose additional punishment, is there? They knew about it? I believe they did, yes. Okay. So what's wrong with that hearing, then? How is that inadequate? The inadequacy of the hearing has to deal with the 10 days. And if you look at Goss v. Lopez, that's what that case is all about, that a school can't issue a 10-day suspension without first having a hearing. And our argument is the hearing happened after the 10-day suspension, not before. So all of his prior discipline had been completed. They were brought down to the principal's office one more time on December 21st, and brought in and said — you know, and asked, you know, what happened. Because when they first met with the principal, the principal didn't ask necessarily what had happened. He was relying on what the athletic director and the head coach had reported, which, by the way, was all the same facts that the plaintiff shared with the principal as well. There were no new facts here. Nothing had changed other than the fact that this was now in the immediate attention. So the procedural due process argument is that there was no hearing given before the 10-day suspension. The first suspension. The only — yeah, the 10-day suspension that led up to the half-semester suspension. Yes, but it's difficult because it seems to me that he was told that this was his punishment, so to speak, and that he accepted it and served it. And your brief argues that he agreed with that and agreed to serve it, and that was going to be the end of it. Yes, that was the — So now you're arguing that he shouldn't have been suspended for 10 days? You're referring to the two Saturday detentions, the no overnight trips on the wrestling team. That's what you're referring to. He agreed to that, and that's what he served. That was on office again for a second time. That's when the 10-day suspension was issued, after he already served his discipline. Okay. I will reserve the remainder of my time. I actually have a couple of questions before you do sit down. I'm looking at your client's declaration in November of 2012, which simply states that he suffered emotional distress. There was no other affidavit from your client, this is it? No, his other testimony would have just been his deposition testimony. Okay, and I'm looking at his deposition testimony, and in it he describes the emotional distress that he incurred as a result of these events. Correct? Yes. And is there any other evidence of his emotional distress? No, that is — This is the complete record? Yes. Okay. Thank you very much. All right, thank you. Thank you, Mr. Buck. Good morning, Judge Selberman. May it please the Court, Anne Alexander representing Churchill County School District, Superintendent Ross, and School Principal Kevin Lords. I want to correct a couple of misrepresentations, I believe, about the facts. One, to be very clear, Nicholas Borovac testified under oath that he was never told by Principal Kevin Lords in the meeting on December 8th, never told that this was the end of it. In his reply brief, he says Borovac was told this is the end of it. If you look at those those are references to what his father says the principal told him. So Nick was never told this is the end of it. But his father makes that representation. His father makes that representation. But I suppose if the father and the son talked about it, I'm not sure why Nick didn't say, gee, dad, I don't know, that's not what he told us. And four other adults who were present in the room on December 8th provided affidavits testifying that the principal most definitely said we're going to continue our investigation. And if anything further comes to light, particularly with regard to what it is you boys have represented to us about photographs, then there will be more. It is odd, though. The punishment was sort of dribbled out in phases. And that's concerning. It's at least atypical. Let me put it that way. And I believe these were atypical circumstances. And I do not disagree with you that punishment was dribbled out. But it's also untrue to represent that the boys told the complete truth, the whole truth all along the way. They, in fact, lied that they had kept photographs and that those photographs were texted to other kids and eventually shown to other kids. When did that become apparent? It became apparent to the school principal on December 15th when another student made that made a report that one of the boys had now shown a photograph. And in Nick Borovac's testimony, he admitted that he had come to know that kids kept photographs and that they had not told the truth about that when they said they didn't. And yet he did not come forward and say, Mr. Lords, I think we told you something that wasn't true. So those are two factual clarifications that I want to make. When did the first media exposure of this event occur? Thank you, Judge Hawkins. What I'd like to address. No, I've asked you a question. Is that there is no evidence on the record. Excuse me. I pardon. Excuse me. My question asks for a date. When did the first media coverage occur? If you know, say so. If you don't say, I don't know. I don't know. Is it in the record at all? It is not in the record. We can look to your opponent for that. Tell me whether the decision to increase the punishment from the earlier suspensions to the semester long suspension occurred before or after the first media reports. I can't tell you precisely. Okay. What I can say. You know, that's what they say. I understand that. And you're not prepared to respond to it. What I'm prepared to respond is that they never introduced any evidence on the record of any media coverage of what the tenor and tone of that media coverage was, whether or not that media coverage include anyone extolling the school district to take some sort of decisive disciplinary action. There is no evidence that they've introduced on the record about anything contained in any media coverage. It's unusual, though, for a school board member to say anything about any particular disciplinary case publicly. Typically, it's one thing to say, you know, we take hazing very seriously. But it's certainly unusual, isn't it, for a school board to make any public comment about an individual disciplinary case? It would be extraordinary for a board member to make a public comment about a disciplined case. The comment to which Mr. Borovac refers is a comment made in a closed disciplinary hearing. It was not open to the public. He also has no evidence that any school board member, any administrator, the superintendent, the principal ever spoke about these matters to anyone publicly, to the press, to anyone in the communities. Right. And to that point, I think you're going right to what I was intending to get to. But to that point, Judge, I think it was Judge Hawkins, asked about the public hearing that he was given, I shouldn't say public hearing, that he was given a hearing much later in the month. Is it December 21 when there was the hearing? What's the date of the hearing? His first panel, disciplined hearing, where the panel heard the matter in order to decide whether to recommend suspension or expulsion was held on January 24th. So were the comments made there? And was that an open door meeting? That's what I'm trying to get at. That was a closed meeting. The comments to which Mr. Borovac refers were made by board members in the hearing of the school board of another student, not even his own hearing. Counsel, that's what I'm trying to get at. This is like, I'm not trying to pull teeth. I'm trying to get at that point. Was that statement made in a public school board meeting or a closed meeting? No, no, no. The school board does not have public meetings to discuss disciplined hearings. So how is it that they know about it if that meeting was a closed door meeting and it pertained to a different student? Because the student, in that instance, obtained a recording of it and provided it to the Borovac family. Thank you. Let me ask you a question. If I understand correctly, most of this case was kicked out on summary judgment, is that right? Yes, Your Honor. But the ineffectiveness or the intentional infliction of emotional distress claim was dismissed on a motion to dismiss? It was dismissed on motion to dismiss, yes. And in that setting, we take as true the allegations of the complaint, right? I beg your pardon? In ruling on a motion to dismiss, refer you to state a claim, we assume that what's in the complaint is true. Yes, but there must be well-pleaded facts. That's what I'm getting at. In what respect was the complaint defective that it failed to state a claim? Specifically defective because, and I'll go through the allegations that are in the complaint, that the decision was based on an unsupported rumor, and yet they never provide a single fact about any unsupported rumor. This is a complaint, not summary judgment. I understand. So we're assuming that what they say is true. But we don't have to assume what they say is true if all they're doing is making conclusory statements and not providing any factual evidence at all or any factual statements that could lead the court reasonably to conclude that they might prevail on that. Are you relying on Iqbal Twombly? I am. What else? They say that the panel's conclusion was contrary to constitutional rights, contrary to evidence, contrary to legal and contractual requirements. That's conclusory. I thought Judge Silverman was talking about the emotional distress claim. These are the allegations that are made in the emotional distress claim. Okay. They state that the school's board decision was based on the member's own desire for political and personal gain. Even if true, an improper motive is not beyond all bounds of human decency. A member needed to be able to explain when he runs for re-election, again, using his own judgment and his experience. Judge Hicks said school board members' concern about their constituents is not beyond all bounds of human decency. There are then two allegations about what they speculate and surmise that the defendants intended to do, that they intended to use this information publicly, that they, in order to support their own re-elections or to somehow place themselves in a better light, and yet, by the time this complaint was written, they couldn't provide even a single example of such being the case. And, of course, when— We look at the complaint at the time it's filed. And, again, I'm a little concerned that if we are to assume what he says is true, then we have to evaluate whether the complaint gets us to the next stage. You say he didn't come forward with evidence, but that's not the place you come up with evidence. I do believe that in his complaint he could have used one fact, one example, and made an allegation of fact to support that conclusory argument. To the extent, also, that you may affirm based on any evidence that exists now in the record, I have also provided you with all of Nicholas Borovac's testimony that he provided in the record that he actually had no evidence and no examples of any of those conclusory allegations that he made. Nicholas Borovac was provided a more procedural due process than the Constitution requires. Churchill County School District allows for a board rehearing of a panel decision, not required by the Constitution. He most definitely was given notice and an opportunity to tell his side of the story in detail before his 10-day suspension was imposed. And he did that in his individual meeting with the principal on December 21st. That happened before the additional 10 days was imposed. His argument, as you know, is that he, at that point, thought he had already, again, this goes back to dribbling out the punishment, that he, when he met with the principal, he didn't have notice that there was a possibility that more discipline might be imposed because he had already served his punishment. I understand that. They have not cited to a single case that would require that he be given that additional notice, but I would also just remind the Court that if discipline was dribbling out over time, it's also true that the facts were dribbling out over time, that these boys had not told anyone truthfully that they not only had taken pictures, they had kept pictures, and that they had disseminated photographs. And it is the intersection, I think, of technology and immaturity that sometimes causes what is a particularly heinous act committed on this boy. He was, once he was taped to that table and his pants were down around his knees, he was placed outside in an open public breezeway for others to walk by and see while his mouth is taped and he cannot get help. This is an extraordinarily dangerous and serious act. It isn't a minor act of hazing. And to the extent that those details then become very public for that child, that is a significant fact that came before the school principal in that interim time. Further questions, Your Honor? Thank you very much, Ms. Alexander. Thank you for your time. Mr. Brock, you had a little time left. I just wanted to address the school district says that Borabak was never told that that would be the end of it. In fact, Borabak was a minor at that point. His father was told and testified that he was informed by the principal that that was the end of it. That's my reading of the record, too. I think the dad testified quite clearly to that effect. So what's wrong with that? Her response is the facts came dribbling out and the punishment followed. And we disagree with that. We believe that all the facts were there on December 6th when they met with the head coach and that and those facts were passed on to the boys told the coach the very first self-report included indication of the photo. Yes. In fact, if you look at the record, the there is testimony that he was informed of the photos at that meeting. What? Well, of course, the first meeting, the first indication coach said, I don't want to hear about it. You mean the second? Right. On December 6th, when they informed the coach of everything, the fact that there were pictures came out. My client testified that at that point he believed that all of those photos had been deleted. There did come a point later on where there were allegations. I'm not sure if they were ever proven that one of the students, not my client, another student had photos still on his phone that he had not deleted. Of course, my client on December 6th had no knowledge of that. The media coverage. There is evidence in the record of the media coverage. We asked Principal Lords in his deposition if he became aware at some point that there was media coverage and he said yes. We asked him when he became aware of that. He said that he wasn't sure. It's our understanding that in the day or two prior to the meeting on December 21st, either the first media report aired or the school was contacted for comment by the media and that's how the school became aware of the media attention. This is your assumption? There's not an affidavit in the record that says the media broadcast was on December whatever? There's not. That goes back to my very first question. What's wrong with that? With school board members needing to take action because the public is very concerned about this incident? There's nothing wrong with a school board member taking action because it's needed. What the inference is here is that this is going to be an issue that he's going to have to address in re-election. Well, that's one inference. And the other inference is that the punishment, the initial discipline wasn't sufficient given all the facts that had come out. Well, there's nothing wrong with a school board member feeling that they need to do what is just and what is right. But to reference your re-election campaign in the process of doing that just... It may have just meant that the public's going to want to know that this is taken seriously. That's my point. It seems to me to be ambiguous. And they have no ability to inform the public of whatever happened at this hearing. It's a closed hearing. It's confidential. So there would never be an ability for them to address... Hard for us to know that. I actually have that very question. We don't have in this record anything that indicates the way this was portrayed to the public or if one of the stories was in the television report was something to the effect that the punishment was just a slap on the wrist. I believe it came out, the media attention came out as a result of the victim's father. My understanding from another case is that the victim's father went to the media and actually sought the media attention himself. Well, we don't have this in the record, right? It's not in the record in this case. Okay. And just to be clear, the notice requirement that we're talking about deals with the 10 days. That's it. Yes. That's it. Thank you. Thank you, Ms. Alexander. Thank you. The case just argued is submitted. Good morning.
judges: Hawkins, Silverman, Christen